**Charles HARRIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 41124.**

Court of Criminal Appeals of Texas.

March 20, 1968.

Joe Shannon, Fort Worth, on appeal only, for appellant.

Frank Coffey, Dist. Atty., Gordon Gray and Rufus Adcock, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is assault with intent to murder with malice; the punishment, 25 years.

Appellant's able court appointed counsel on appeal, agreeing that the trial judge appears to have attempted to conduct a judicial trial and made a much admired attempt to speak and act in such manner as not to prejudice any of the rights of appellant, contends that "the Statement of Facts as a whole, shows that this was not done or could not have been done and that many of the actions and remarks, although they may have been prompted by the appellant's attitude, actions and remarks, were of such a nature that the jury could not help but receive the impression that the Trial Court was prejudiced against the defendant, although at the same time, making an effort to see that he was accorded a fair and impartial trial."

With this as background, four specific grounds of error are presented in appellant's brief.

The first presents the contention that the court erred in overruling appellant's alternative motion that he be allowed to represent himself, thereby depriving him of the rights granted him under Art. I, Sec. 10, of the Constitution of Texas, Vernon's Ann.St., which provides "that the accused shall have the right of being heard by himself or by counsel or both."

On February 13, 1967, appellant requested the court to appoint counsel for him, and the court having determined that he was too poor to employ counsel, appointed Harry N. Ward, Jr., a practicing attorney of the Tarrant County Bar, to defend appellant.

Mr. Ward filed motion for continuance the same day and on March 23 filed Exceptions to pre-trial hearing and Exceptions to the Indictment.

When the case was called for trial, on April 17, 1967, appellant pro se filed application for continuance, one of his allegations being that his court appointed counsel "is patently unfit, incapable and wholly incompetent" to legally represent him.

Also filed the same day was a motion signed and sworn to by appellant requesting that the court appoint another attorney, experienced in the trial of criminal cases, to represent him in view of the lack of experience of Harry N. Ward, Jr., in the trial of contested criminal cases.

Another motion filed by appellant pro se on the day the case was called for trial was styled "Motion to Strike Counsel of Record and Reassignment of Counsel Competent."

In this motion appellant swore that his court appointed counsel (A) was without sufficient court room training to properly conduct defendant's case; (B) Lacks a coherent plan of defense; (C) Lacks the time, initiative, imagination, memory and spirit to conceive or plan proper legal defense; (D) Lacks devotion to the legal interests of defendant and diligence in filing requested motions or interrogating defense witnesses.

Upon such averments appellant moved the court to "forthwith issue an order striking counsel of record and reassignment of counsel competent to defend him during every stage of the cause now pending against him," and in the alternative, and only in the alternative, prayed leave to conduct pro se, every stage of his own legal defense.

After allowing appellant full opportunity to present evidence in support of his allegation that his court appointed counsel was incompetent, the trial judge overruled the motion stating that said counsel was a graduate from one of the better law

schools of the State of Texas; had ten years actual practice, a year and a half of it in the District Attorney's office; that he regularly represented people in the court; was recommended by the Ft. Worth-Tarrant County Bar Association as competent to represent a case of this nature, and the court found "that the lawyer is competent and very competent."

Appellant's request for permission to conduct the examination of the jury panel was granted, as was his request to examine the witnesses.

■ That the court wisely declined to permit appellant's court appointed counsel to withdraw and leave appellant without counsel is made manifest by the record, which reflects that because appellant, an experienced recidivist, was unable to comply with or refused to abide by the rulings of the court while attempting to conduct his own defense, it became necessary that the court require him to allow his court appointed counsel to assist him or to conduct his defense.

We are aware of no authority which requires or warrants reversal of a conviction for rulings of the trial court made necessary by the conduct of the defendant in the trial before the jury.

■ Ground of error No. 2 complains of the testimony of Rosyln Glenn, an eye witness to the shooting, to the effect that the victim told her "that she knew this was going to happen."

The complained of testimony was elicited from the witness when she was recalled and examined by appellant himself.

"Q.   (By the Defendant) Did you see who shot Mrs. Adams?

"A.   I just saw a man and that was all. I don't remember what he looked like or anything like that.

"Q.   And you did not have any talk thereafter with Mrs. Adams?

"A.   Oh, we went back, I went back out there and she told me she knew this was going to happen and that was all.

"THE DEFENDANT: If the Court please, we move to strike that particular testimony, that she knew it was going to happen.

"THE COURT: Objection overruled."

The witness had testified on direct examination without objection that after the shots were fired and the man left, the victim said: "I knew it was going to happen and that is all."

Also, the testimony was admissible as a res gestae statement. Ground of error No. 2 is overruled.

■ Ground of error No. 3 complains of a comment of the court in the jury's presence: "All right, bring in Mr. Engle. Now, Gentlemen, let's try to bring out something additional. On that last witness we covered exactly the same ground that was covered yesterday. We will be here from now on if we call these same witnesses and go back over the same testimony, if we try to plow the same field over and over again. Let's proceed."

This admonition was made following the examination of the witness Glenn and other witnesses who had been recalled and examined by appellant pro se, and again cross-examined by counsel for the state.

While the admonition should not have been given in the jury's presence, it was not addressed to appellant alone and no objection was made at the time.

Ground of error No. 3 is overruled.

■ The fourth and last ground of error is that the court erred in refusing to allow appellant to recall Gladys Adams, the injured party, for the stated purpose of impeaching the testimony of the witness Williams.

Williams was a defense witness, called to testify by appellant against the advice of

his counsel. Appellant's announced purpose was to "lay the foundation to show that there were numerous motives here in the city as to why Mrs. Gladys Adams might be attacked or might be shot. We want the jury to have that information and the jurors to know about it." This was followed by the court's ruling: "Well, all right, I will overrule the objection."

"THE COURT: Let's hear the question."

No further questions were propounded and after conference between appellant and his counsel the witness Williams was passed and excused.

Ground of error No. 4 is without merit.

The judgment is affirmed.