Archie D. WRIGHT, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 76–2146.

United States Court of Appeals, Fifth Circuit.

March 30, 1977.

---

972

John W. Jennings, Atty., Staff Counsel for Inmates, Tex. Dept. of Corr., Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Chief, Enforcement Div., David M. Kendall, First Asst. Atty. Gen., Richel Rivers, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEWIN, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

This is an appeal from a judgment of the district court denying petitioner, Archie Wright's, application for a writ of habeas corpus.[1] The complaints presented in this application were previously presented to the state criminal court where a full evidentiary hearing was afforded petitioner and the application was denied. In this federal habeas appeal petitioner submits he had a fundamental right under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution to testify in his own behalf which could not be waived by his attorney for purposes of trial strategy.

During the trial of petitioner, a conflict arose between petitioner and one of his court-appointed attorneys as to whether petitioner should be allowed to take the stand in his own defense. This attorney testified at the state habeas hearing it was his decision and if petitioner insisted on testifying he would not represent him. He also stated that the reason he refused to allow petitioner to testify was that he was afraid petitioner would testify to a version of the facts different from the prosecution's key witness, Joe Kenneth Polk, and the defense's key witness, Robert Lee Davis, both of whom were indicted for the same crime, murder with malice, and convicted in separate proceedings. For the following reasons we affirm the judgment below.

On August 22, 1966, a robbery of the Atlantic Liquor Store, was attempted during which the owner-operator, John Brown Cooper, was shot to death. There were no eye witnesses except the perpetrators themselves. At the scene of the crime a pair of work pants belonging to Polk were found under the body of the victim. After an investigation the police arrested Polk, Robert Lee Davis, and Archie Wright, the petitioner. Davis was the first of the three tried. He was convicted and sentenced to life in prison. Petitioner was subsequently tried and during his trial Polk testified for the prosecution. His testimony is basically the following.

On August 22, 1966, Polk was employed at the Fidelity Union Parking Garage on the day shift which lasts from 7:00 A.M. to 7:30 P.M. On this day Archie Wright and Robert Davis came to visit Polk on the job at approximately 6:00 P.M. The three of

1. 28 U.S.C. § 2253.

them and Sam Giles, another employee, went to the garage's locker room where they stayed until 7:35 P.M. when Polk's shift ended. Polk testified upon leaving he carried a pair of his work pants and petitioner carried a paper bag. The four of them went to the nearby Salinas Cafe where Polk had a sandwich and each had a beer. They left the restaurant after about ten minutes and proceeded to the All Right Garage where Polk had a conversation with Raymond Major, an employee there.[2] While he was talking Davis and Wright left together. About five minutes later Polk followed and began looking for them. Polk testified that in his search he found it necessary to ask a lady standing at a bus stop if she had seen the other two men. She had and directed Polk across the street to the Pulley Bone which was a short block away from the liquor store. Polk crossed the street and at that point saw Wright in front of the liquor store and called to him. Petitioner responded by motioning Polk away and then entered the liquor store. Polk headed toward the liquor store and heard a gun shot when he was two doors away. He had not seen Davis until that moment when both Wright and Davis in that order emerged from the store. Wright still carried the paper bag. Wright immediately said "Robert shot that man," and Robert then said "I had to". Both Wright and Davis then ran across the street toward the Fidelity Union Life Building. Polk then returned to the All Right Garage where he questioned Raymond Major to see if he had seen Wright and Davis pass by. Polk admitted on the stand he did this in order to give the impression he knew nothing about what had happened.[3]

Polk also testified that in conversation with Wright earlier that week Wright said he had owned two guns—the first without a firing pin and the second which he now had with a firing pin. Polk also added that he carried a pair of his pants with him on the evening of August 22 but he did not know how his pants ended up underneath the victim. It is also not clear from the record whether there was more than one pair of pants.

For his defense petitioner's counsel called Robert Lee Davis to the stand. Davis testified that on August 22, 1966 he went to the Fidelity Union Parking Garage at 6:15 P.M. where he met Wright, Polk, Giles and several others who worked at the garage. The four named men went back to the locker room where they all finished a pint of whiskey. Davis stated the four left the garage about 7:30 P.M. and went to the Salinas Cafe. Polk carried a pair of his work pants and Wright was not carrying a paper bag. At the cafe each had a beer and Polk had a sandwich. They stayed approximately fifteen minutes and then Polk suggested they leave.[4]

According to Davis, upon leaving the cafe the three started walking around the downtown area. Wright stated they needed some money so they went to the All Right Garage where Polk spoke with Raymond Major. Wright and Davis walked off and Polk joined them within a few minutes. Davis stated he wanted to go to the post office for a change of address card but he did not go. Polk then asked Wright for his pistol and giving it to him Wright stated "Try to get ten dollars for the pistol." Polk and Davis then proceeded to the liquor store.

At the liquor store Polk told Cooper, the owner, he would like to pawn his gun which at that time was covered by the pair of pants. Polk slipped the pants back revealing the gun and Cooper then grabbed Polk. Davis grabbed Cooper and there was a scuf-

---

**2.** It is unknown from Polk's testimony at what point Sam Giles left the group.

**3.** Raymond Major's testimony corroborates Polk's to the extent that he came back alone the second time and questioned him about Wright and Davis but Major contradicted Polk's testimony that Polk left the All Right Garage the first time after Wright and Davis did. Major said they all left together.

**4.** At this point it is also unclear whether or not Sam Giles was with the other three after they left the cafe. From the testimony it appears he was not.

fle. The gun went off, Cooper fell and the two ran from the store. Wright was across the street and Davis told him Polk had shot Cooper. They all then ran to the Salinas Cafe.[5]

The findings of the court below indicate that Wright's counsel during the above trial refused to allow him to testify. The attorney explained that if Wright told the same story to the jury that he told him it would appear to be a third version. The attorney also felt, although it might have been true, a third version might have resulted in Wright receiving the death penalty if the jury thought he was lying.

Wright's application for the writ states that his story only differed from Davis' in the names of buildings and streets with which Wright said Davis was not familiar.

Other evidence presented reflects that the gun used was secured from Wright and a watch belonging to the deceased was found in Wright's possession at the time of his arrest.

On the basis of these facts we need not consider the question of whether a defendant has a fundamental right to testify in his own behalf that can only be waived by him. Even if petitioner was deprived of such a personal constitutional right (assuming *arguendo* to testify in one's own behalf is a fundamental right) we are convinced, as the court below was, it was harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967). It was harmless error beyond a reasonable doubt because we have no doubt that petitioner's testimony would not have altered the verdict. The evidence connecting Wright to this crime was overwhelming.

Accordingly, the judgment of the district court is affirmed.

---

5. Corroboration of Davis' testimony is lacking in many respects. For example, testimony from the night manager of the Fidelity Union Parking Garage indicates he saw Wright and Davis running through the garage around 8:30–8:45 P.M., coming from the direction of the liquor store. From the testimony of the pathologist it could also be concluded that the victim was sitting because the bullet entered the deceased's shoulder in a downward path.