Archie D. WRIGHT, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 76–2146.

United States Court of Appeals, Fifth Circuit.

May 10, 1978.

Thornberry, Clark, Roney, Gee and Hill, Circuit Judges, filed specially concurring opinion.

Godbold, Circuit Judge, filed a dissenting opinion in which Goldberg and Tjoflat, Circuit Judges, joined.

Ken Anderson, Staff Counsel for Inmates, Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Chief Enforcement Div., David M. Kendall, Jr., First Asst. Atty. Gen., Richel Rivers, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, Chief Judge and GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL and FAY, Circuit Judges.*

BY THE COURT:

The panel opinion in this case is reported, *Archie D. Wright v. W. J. Estelle, Jr., Director, Texas Department of Corrections,* 5 Cir., 1977, 549 F.2d 971.

Upon rehearing at New Orleans on September 27, 1977, the Court en banc adheres to the panel opinion as published.

The judgment of the District Court is AFFIRMED.

* Judges Rubin and Vance were not members of the Court when this case was argued and submitted and did not participate in the consideration of this decision.

1. *United States v. Chiantese,* 560 F.2d 1244, 1256 [No. 75–3534, slip op. 227, at 242] (5 Cir. 1977) (Hill, J., concurring).

2. The harmless error rule obviously applies, for example, in cases in which evidence was erroneously admitted. In that context the Federal Rules of Evidence operate as a broad policy framework and as a guide for trial judges. In the case at bar, however, the court is being asked to fashion a constitutional standard, and in our view application of the harmless error

THORNBERRY, CLARK, RONEY, GEE and HILL, Circuit Judges, specially concurring.

While we agree with the result reached by the majority in this case, we must respectfully disagree with the majority's reasoning. We believe that the court is here faced foursquare with a constitutional question and, with all deference, we think the court does a disservice in merely assuming for sake of argument the existence of a personal constitutional right to testify and then declaring that in this case any denial of that right is harmless error. *Wright v. Estelle,* 549 F.2d 971, 974 (5 Cir. 1977).

This court's reasoning offers little or no guidance to the bench and bar. One of our most important duties is to define the law so that litigants, lawyers, and trial judges can proceed with some degree of certainty.[1] A trial judge must know whether a defendant has personal control over his right to testify; it is little solace for the judge to know that even though he *may* have violated the defendant's personal right to testify, the error *may* be harmless.[2] Moreover, the many conscientious court-appointed attorneys of this circuit deserve to have this question settled so that they might go about their business without the fear of violating a defendant's constitutional right.

The real question in this case is not whether the right to testify is a personal or a fundamental right; rather, it involves the proper allocation of authority between the

rule is nothing more than abdication of our responsibility.

Moreover, the court gives *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) little more than judicial lipservice by applying the "clearly guilty" rule without articulating the reasons therefor. To say that the defendant's testimony "would not have altered the verdict" is to say nothing more than the defendant was clearly guilty. Surely *Chapman* requires more analysis than this. As we understand *Chapman,* the court should not determine whether the defendant is guilty beyond a reasonable doubt but whether the defendant would have been convicted had the error not been made.

attorney and his client. The defendant, of course, has the authority in the first instance to accept or reject court-appointed representation. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). If he decides to accept an attorney, the defendant has necessarily delegated important decisionmaking authority to his attorney. The scope of the delegation does not turn on the importance of the decision—the attorney frequently makes judgments affecting the very life of the defendant. The question here is twofold: who is in a better position to judge trial strategy and who is in a better position to ensure the best interests of the defendant.[3] This court's history is filled with the recognition of the value of an attorney. No one could seriously contend that a defendant is in a better position to dictate trial strategy than his attorney. Moreover, a court-appointed attorney owes a duty to society to see that his client is given the best possible defense within the law. No attorney could discharge this duty if he must yield to the personal demands of his client.

In the case at bar, when Wright advised his attorney that he would testify, his attorney owed him a duty to evaluate that choice and assist his client with proper advice. Trial attorneys are professional artisans working in a highly competitive arena that requires all the skills which education, training, and experience have given them. Criminal defendants are entitled to no less. A defendant has a right to necessary surgery, but he does not have the right to require the surgeon to perform an operation contrary to accepted medical practice. If, despite his counsel's advice, a defendant continues to believe that his testimony is more important than the continued services of an attorney who insists he should not

take the stand, the conflict must be resolved by the court. Only in this way may the right to testify be reconciled with the right to effective assistance of counsel.

Judge Godbold's dissent would brand counsel here as ineffective for failure to inform Wright that he had a right to testify and for failure to tell him that the court would have to resolve any impasse. This position assumes that Wright considered his attorney's response to his request to take the stand as a threat by the attorney to leave Wright defenseless. Such an assumption is unwarranted. In the first place, the dialogue between Wright and his attorney implicitly assumed that Wright could make the final choice to testify. It also clearly told Wright that his lawyer was the sort who put professional duty ahead of expediency. Most significantly, however, there is nothing in the exchange between lawyer and client which would support a finding that counsel was threatening to leave Wright defenseless or that Wright assumed insistence on testifying would forfeit his right to any counsel. Rather than assuming these possibilities and condemning the lawyer, we should commend counsel's candor. If any assumption is made, it should be that the attorney's advice was in the proper discharge of his duty to provide effective counsel and was so accepted by Wright.

While *Faretta* allows a defendant to have a fool for a client, 422 U.S. at 852, 95 S.Ct. 2525 (Blackmun, J., dissenting), there is nothing in its logic that commands that the defendant may also have a fool for an attorney. We would affirm the panel on the ground that the decision whether to testify is properly allocated to the defendant's attorney and not to the defendant.[4] An at-

---

**3.** The same cannot be said for the decision to plead guilty or not guilty—a decision that goes to the very existence of a trial. To deny the defendant control over this decision could be tantamount to denying the defendant a trial. Here, of course, there is a trial and the decision made by the attorney goes merely to strategy. The decision to waive a defendant's right to testify is viewed as a part of trial tactics in more than a dozen decisions. Comment, *Due*

*Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify,* 3 Hastings Const.L.Q. 517, 529 (1976).

**4.** In *United States v. Wayman,* 510 F.2d 1020, 1026 (5 Cir. 1975), an attorney representing co-defendants refused to allow one of the defendants to testify. In reviewing this decision, we said:

We are unwilling to conclude that Mr. Auld's [the attorney] alleged refusal to let Moore

torney is not necessarily ineffective if he determines not to allow his client to testify, even though he should give great deference to a defendant's desire to testify, however, we are here concerned with constitutional requirements and there is no constitutional requirement that a court-appointed attorney must walk his client to the electric chair.

GODBOLD, Circuit Judge, dissenting: with whom GOLDBERG and TJOFLAT, Circuit Judges, join, dissenting.

Petitioner Wright is a Texas state prisoner under life sentence following a conviction for murder. He has appealed from the federal district court's denial of habeas corpus. In the state court trial on the merits the prosecution sought the death penalty. Petitioner was represented by two court-appointed attorneys. During trial a conflict arose between Wright and his counsel concerning whether Wright should take the stand to testify in his own defense. For tactical reasons and over Wright's opposition, counsel made the decision that Wright should not testify and would not allow him to take the stand. During these trial discussions, lead counsel told Wright that if Wright elected to testify the attorney would no longer represent him. Neither counsel moved for leave to withdraw nor did either call the attention of the court to the controversy in any other manner.

The panel of this court considered the appeal to raise two issues: (1) whether the right of the defendant to testify in his own behalf is a "fundamental right" that could be waived only by him; (2) if it was a "fundamental right," was the violation harmless error beyond reasonable doubt under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The panel opinion disposed of these issues by a few cryptic sentences:

> [the defendant] testify on his own behalf was the result of a conflict of interest and was prejudicial to him.

**1.** The opinion refers to a conflict between petitioner and *one* of his court-appointed attorneys. However, neither the panel nor the federal habeas judge based their findings of harmless error beyond reasonable doubt upon the pres-

On the basis of these facts we need not consider the question of whether a defendant has a fundamental right to testify in his own behalf that can only be waived by him. Even if petitioner was deprived of such a personal constitutional right (assuming *arguendo* to testify in one's own behalf is a fundamental right) we are convinced, as the court below was, it was harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967). It was harmless error beyond a reasonable doubt because we have no doubt that petitioner's testimony would not have altered the verdict. The evidence connecting Wright to this crime was overwhelming.[1]

*Wright v. Estelle*, 549 F.2d 971 (CA5, 1977). The order of the court en banc is no more enlightening than the panel opinion. As Judge Thornberry cogently points out in his special concurring opinion, the court has failed to discharge its responsibilities in this case.

As I see it, the case requires several inquiries:

(1) Was petitioner denied a constitutional right to testify on his own behalf?

(2) If petitioner had a constitutional right to testify can its denial be treated as harmless error beyond a reasonable doubt under *Chapman v. California*?

(3) Regardless of the constitutional status of a right to testify, was petitioner denied effective assistance of counsel?

(4) Did petitioner waive his right to testify?

(1) The constitutional right to testify

I believe that the right to testify personally has achieved constitutional stature.

ence of co-counsel in the case, but rather upon the content and presumed impact of what petitioner would have said if he had testified. The state habeas judge found that petitioner's *attorneys* would not allow him to testify. Thus, the panel's reference to "one of his court-appointed attorneys" has no substantive significance in the case.

Because the right to testify is fundamental and personal to the defendant, counsel may not waive the right for the defendant. When counsel overrides the client, as here, constitutional error is committed.

### (a) The right to testify is constitutional in dimension.

The right[2] of a criminal defendant to testify in his own defense was unknown to the common law and is statutory in origin.[3] In all American jurisdictions it is now recognized by statute.[4] Texas, the state in which petitioner was tried, grants a right to testify both by constitution and statute. The Texas constitution, art. I § 10, provides: "In all criminal prosecutions the accused shall have . . . the right of being heard by himself or counsel, or both . . . ." The Texas Code of Criminal Procedure art. 38.08 provides: "Any defendant in a criminal action shall be permitted to testify in his own behalf therein . . . ."

I believe that the federal constitution now requires state and federal courts to allow a defendant to testify.[5] Most often the right is treated as part of due process. In 1948, in *Re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682, 695 (1948), the Supreme Court spelled out the minimum demands of due process in a case of contempt (not committed in the presence of the court):

> . . . *[D]ue process . . . requires that one* charged with contempt of court be advised of the charges against

him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and *have a chance to testify* and call other witnesses in his behalf, either by way of defense or explanation. (Emphasis added.)

In *Faretta v. California*, 422 U.S. 860, 819–20 n.15, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 572–73 n.15 (1975), the Supreme Court referred to the right to testify in due process terms:

> This Court has often recognized the *constitutional stature* of rights that, though not literally expressed in the document, are essential to due process of law in a fair adversary process. *It is now accepted, for example, that an accused has a right . . . to testify on his own behalf . . . .* (Emphasis added.)

This circuit made a similar reference in *MacKenna v. Ellis*, 280 F.2d 592, 595 (CA5, 1960), *modified*, 289 F.2d 928 (CA5, 1961) (en banc):

> [I]t is basic to due process that an accused person have a fair opportunity to tell his story in a fair trial.

Several state courts have also considered the right to testify to be part of a Fourteenth Amendment right to a fair trial.[6] In their separate opinions in *Ferguson v. Georgia*, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961), Justices Frankfurter and Clark urged that a state statute making a defendant incompetent to testify at his own trial

---

**2.** It has been called both right and privilege. I attach no significance to the right-privilege dichotomy and refer to it by either description.

**3.** For a discussion of the history of the right, *see* Note: *Due Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify*, 3 Hastings Constitutional Law Quarterly, 517, 519–29 (1976) (Hereafter cited as "Hastings Note").

**4.** The federal statute, 18 U.S.C. § 3481, provides:

> "In trial of all persons charged with the commission of offenses against the United States . . . the person charged shall, at his own request, be a competent witness."

**5.** The *Hastings Note, supra* n.3, urges this conclusion.

**6.** *People v. Mosqueda*, 5 Cal.App.3d 540, 545, 85 Cal.Rptr. 346, 349 (1970), *citing Ferguson v. Georgia*, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); *accord, Pigg v. State*, 253 Ind. 329, 330, 253 N.E.2d 266, 267 (1969); *People v. Farrar*, 36 Mich.App. 294, 304–05 n.20, 193 N.W.2d 363, 369 n.20 (1972); *People v. Rolston*, 31 Mich.App. 200, 206, 187 N.W.2d 454, 457 (1971); *People v. Hall*, 19 Mich.App. 95, 114–15 n.17, 172 N.W.2d 473, 483 n.17 (1969); *People v. Hernandez*, 94 P.R.R. 111, 116 (1967).

was a violation of due process.[7] The procedural due process constitutionally required in some extra-judicial proceedings includes the right of the affected person to testify: *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656, 664 (1973) (probation revocation); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972) (parole revocation); *Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 299–300 (1973) (termination of welfare benefits).

The right to testify also may be considered as included in the Sixth Amendment's guarantees of the defendant's right to meet and deny the accusation against him, *Walder v. U. S.,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954), his right to present evidence, *Jenkins v. McKeithen,* 395 U.S. 411, 429, 89 S.Ct. 1843, 1852, 23 L.Ed.2d 404, 421 (1969), and his right to present witnesses on his behalf (in the instant case, to present himself as witness), *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, 1022 (1967).[8]

Other cases have recognized the right as constitutional but without identifying the source. *U. S. v. McCord,* 137 U.S.App.D.C. 5, 7, 420 F.2d 255, 257 (1969) ("as a matter of law, a defendant is always vouchsafed the constitutional right to testify"); *Fowle v. U. S.,* 410 F.2d 48, 53 (CA9, 1969) (the right to testify is "a basic constitutional guarantee"). This circuit assumed in *Parsons v. U. S.,* 404 F.2d 888 (CA5, 1968), that denial by counsel of defendant's right to

testify would nullify a conviction on collateral attack. Appellant contended that his counsel was incompetent because he was denied the right to take the stand in his defense. We affirmed the denial of § 2255 relief but the basis was not that appellant had no right to testify. Rather the ground was that appellant's court-appointed attorney had advised him not to testify but had "further advised that even in the light of such advice he was free to testify or not to testify according to his own judgment." 404 F.2d at 888. In *Faretta v. California* the Supreme Court said, "It is now accepted . . . that an accused has a right . . to testify in his own behalf . . . ." The authority cited for this was not statutory but case law: *Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358, 363–64 (1972), where the Court said in dictum "whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right", *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), where the Court said that the defendant has no privilege to perjure himself but "every criminal defendant is privileged to testify in his own defense or to refuse to do so", and *Ferguson v. Georgia.*

Thus, although the Supreme Court has never directly addressed the issue of a defendant's right to testify, the case law clearly indicates that the Court (as well as many lower courts to consider the issue)[9]

7. The Court discussed two Georgia statutes. One made the defendant incompetent to be a witness at his own trial. The other permitted defendant to take the stand to make an unsworn statement but denied him the right to have his counsel elicit his statement by questions. The appellant raised only the validity of the restraint on questioning by his counsel, and the Court held this was a violation of due process. Logically it would seem to follow from this holding that a defendant cannot be denied the right to take the stand at all. However, the Court did not reach the validity of the incompetency statute since appellant had not attacked it. Justices Frankfurter and Clark urged that the Court should reach the validity of the incompetency statute, which in their view violated due process. 365 U.S. at 599 and 602, 81 S.Ct. at 771 and 773, 5 L.Ed.2d at 799 and 801.

8. The privilege "has come to be recognized as having an importance similar to the right to be present at one's trial and to present a defense." *U. S. v. Bentvena,* 319 F.2d 916, 943 (CA2, 1963), *cert. denied.*

9. There are cases that say, or accept, that the right to testify is not constitutionally guaranteed. Some of these cases, approaching the issue through the entry point of effectiveness of counsel, have relied upon the rubric of the right of counsel to make a strategic or tactical decision and have concluded that counsel's limitation of the defendant's right to testify was not ineffective counsel in the constitutional sense. *E. g., Sims v. Lane,* 411 F.2d 661 (CA7, 1969), *cert. denied,* 396 U.S. 943, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); *U. S. v. Garguilo,* 324 F.2d 795 (CA2, 1963); *Newsom v. Smyth,* 261

feels that a defendant's right to testify is constitutionally mandated. Under my reading of these cases, a defendant may not be denied the right to take the stand, by a statute, by the judge (except where orderly trial commands otherwise), or by his attorney.

### (b) The right to testify is fundamental and personal to the defendant and may not be waived by counsel.

If, as I believe, a defendant has a constitutional right to testify, the question becomes whether court-appointed counsel may control a defendant's ability to exercise this right. Some constitutional rights are so fundamental that they are deemed to be personal rights of the defendant, and decisions concerning them are exercisable only by the defendant and not by counsel: the decision whether to plead guilty, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); the decision whether to ask for a jury trial, *Adams v. U. S. ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), *Patton v. U. S.*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); the decision to appeal, *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963); and the decision whether to forego the assistance of counsel, *Faretta v. California*. Other decisions less fundamental are allocated to defense counsel under the rubric of trial strategy and can be made by counsel without the knowledge or consent of defendant, such as whether to object to illegally seized evidence, *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), and whether to object to jury com-

position, *Winters v. Cook*, 489 F.2d 174 (CA5, 1973) (en banc). These matters allocated to counsel encompass the great bulk of decisions made at trial.

The Supreme Court has not squarely held that the right to testify is so fundamental that it is personal to the defendant. But Chief Justice Burger, concurring in *Wainwright v. Sykes*, 433 U.S. 72, 92, 97 S.Ct. 2497, 2509, 53 L.Ed.2d 594, 612 n.1 (1977), indicated his belief that the decision to testify is one of only a few basic decisions personal to the defendant. He cited in support the ABA Report on Standards Relating to Prosecution Function and Defense Function, §§ 5.2, 237–38 (1970), which states:

> (a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are . . . (iii) whether to testify in his own behalf.

In *Winters v. Cook* this court en banc held that a constitutional challenge to grand jury composition could be waived by counsel; it was not "an inherently personal right of fundamental importance." In dictum the court said: "Such personal fundamental rights include the right to plead guilty . . . , the right to waive trial by jury, the right to waive appellate review and *the right to testify personally.*" *Id.* at 179 (emphasis added).

The rationale of *Faretta v. California* and its precursors, relating to the right of the accused to defend himself, leads to the con-

F.2d 452 (CA4, 1958), *cert. denied*, 359 U.S. 969, 79 S.Ct. 883, 3 L.Ed.2d 837 (1959); *Hayes v. Russell*, 405 F.2d 859 (CA6, 1969). None of the courts handing down these decisions had before them the Supreme Court's indications in *Faretta, Harris v. New York, Brooks v. Tennessee*, and *Ferguson v. Georgia* that the right to testify is constitutional in stature, or the like indications from this circuit in *Parsons v. U. S.*, and other circuits in *U. S. v. McCord, Fowle v. U. S.*, and *U. S. ex rel. Wilcox v. Johnson*, 555 F.2d 115 (CA3, 1977). All of these earlier cases predate the decisions recognizing the right to testify as constitutionally required in various extrajudicial proceedings, *Gagnon v. Scarpelli,*

*Morrissey v. Brewer* and *Goldberg v. Kelly.* All predate *Gideon* and the body of law that has developed since *Gideon* concerning right to counsel, the obligations of appointed counsel, and the limitations on the power of appointed counsel to withdraw. Also, some of these earlier cases which found counsel was not ineffective involved retained counsel, and some applied the "farce or mockery" test now discredited in this circuit.

. For reasons developed later in this dissent, I regard the decision to testify as one the defendant himself must make. Thus, I would hold counsel to be ineffective if this personal right were usurped.

clusion that the right to testify is a fundamental right reserved to the defendant for decision. In making the choice on whether to testify, just as the choice on whether to represent himself, the defendant elects whether to become an active participant in the proceeding that affects his life and liberty and to inject his own action, voice and personality into the process to the extent the system permits.

In the narrow world of the courtroom the defendant may have faith, even if mistaken, in his own ability to persuasively tell his story to the jury. He may desire to face his accusers and the jury, state his position, and submit to examination. His interest may extend beyond content to the hope that he will have a personalized impact upon the jury or gain advantage from having taken the stand rather than to seek the shelter of the Fifth Amendment. Or, without regard to impact upon the jury, his desire to tell "his side" in a public forum may be of overriding importance to him. Indeed, in some circumstances the defendant, without regard to the risks, may wish to speak from the stand, over the head of judge and jury, to a larger audience. It is not for his attorney to muzzle him.

In *Green v. U. S.*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (plurality opinion), Justice Frankfurter recognized the personal and fundamental nature of a defendant's right to address his accusers. "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Id.* at 304, 81 S.Ct. at 655, 5 L.Ed.2d at 673. Indeed, our history is replete with trials of defendants who faced the court, determined to speak before their fate was pronounced: Socrates, who condemned Athenian justice heedless of the cup of hemlock; Charles I, who challenged the jurisdiction of the Cromwellians over a divine monarch; Susan B. Anthony, who argued for the female ballot; and Sacco and Vanzetti, who revealed the flaws of their tribunal. To deny a defendant the right to tell his story from the stand dehumanizes the administration of justice. I cannot accept a decision that allows a jury to condemn to death or imprisonment a defendant who desires to speak, without ever having heard the sound of his voice. *See McGautha v. California*, 402 U.S. 183, 220, 91 S.Ct. 1454, 1474, 28 L.Ed.2d 711, 733 (1971).

The decision whether to testify is a matter of higher quality and dignity than trial happenings such as whether to object to evidence. "[W]hatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice." *Faretta v. California*, 422 U.S. at 833–34, 95 S.Ct. at 2540, 45 L.Ed.2d at 580–81. In discussing the right of defendant to defend himself, the D.C. Circuit said:

> An accused has a fundamental right to confront his accusers and . . . to present himself and his position to the jury not merely *as a witness* . . . but as a man on trial who elects to plead his own cause. . . . A defendant has the moral right to stand alone in his hour of trial. . . . Even if the defendant will likely lose the case anyway, he has the right—as he suffers whatever consequences there may be—to the knowledge that it was the claim that he put forward that was considered and rejected, and to the knowledge that in our free society, devoted to the ideal of individual worth, he was not deprived of his free will to make his own choice, in his hour of trial . . . . (Emphasis added.)

*U. S. v. Dougherty*, 154 U.S.App.D.C. 76, 473 F.2d 1113, 1128 (1972). On the same subject the Supreme Court said this:

> The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. . . . When the administration of the criminal law . . . is hedged about as it is by the Constitutional safeguards

for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards [such as the advice of counsel], and to base such denial on an arbitrary rule that a man cannot choose to conduct his defense . . . unless, against his will, he has a lawyer to advise him, although he reasonably deems himself the best advisor for his own needs, is to imprison a man in his privileges and call it the Constitution.

*Adams v. U. S. ex rel. McCann,* 317 U.S. at 279–80, 63 S.Ct. at 241–42, 87 L.Ed. at 274–75.

Like other decisions recognized as personal to the defendant—whether to plead guilty, to ask for a jury, to utilize assistance of counsel, whether to appeal—the defendant's right to testify is fundamental to the dignity and fairness of the judicial process. We would not countenance the harshness of a legal system that would put a defendant to a trial in which he had no opportunity to tell his story. We would reverse out of hand a conviction where the court had denied to an uncounseled defendant the right to testify though he wished to take the stand.

The right to testify is no less basic where the defendant has counsel. Counsel may, and should, advise the defendant on probable consequences of his testifying, but the ultimate decision is for the defendant, and as with the right to represent oneself, *Faretta v. California,* and the right to forego an appeal, "he need have no good or rational reason for his decision," *Shiflett v. Commonwealth of Virginia,* 447 F.2d 50 at 53–4 (CA4, 1971), *cert. denied,* 405 U.S. 994, 92 S.Ct. 1267, 31 L.Ed.2d 462 (1972). The wisdom or unwisdom of the defendant's choice does not diminish his right to make it. The lawyer's authority is vindicated when he advises his client.

Counsel should weigh these considerations and decide in the first instance whether or not he thinks the defendant ought to testify. That decision should be told to the defendant, with the reasons for it. Counsel may properly urge the defendant that it is unwise or dangerous for him to take the stand. However, if a defendant wishes to testify despite advice to the contrary, it is necessary to yield to his stubbornness. . . . Counsel should always clearly outline to the defendant the hazards of his testifying (whether or not counsel wants to put him on). But if this fails to daunt the client, and if counsel's advice against testifying fails to persuade him, the client should be allowed to testify.

A. Amsterdam, *Trial Manual for the Defense of Criminal Cases* §§ 390, 1–390 (2d ed. 1971).[10]

In his special concurring opinion, Judge Thornberry describes the issue as not whether the right to testify is fundamental and personal to the defendant but as involving the proper allocation of authority between attorney and client. He concludes that the decision is for the attorney because counsel is in better position to decide on trial strategy and ensure the best interests of the client. With deference, it is not enough to say that the attorney can do it better, and, if he can, then label the matter "trial strategy." Rather one must examine the subject matter involved in the decision to be made. With respect to other rights the defendant is permitted to make his own decision without regard to whether the attorney might be able to "do it better," as for example, a refusal by defendant to plead guilty and accept a proffered plea bargain, and a refusal of defendant to waive a jury trial though counsel thinks a bench trial is preferable. Surely we would not permit counsel to require his client to take the stand and waive his Fifth Amend-

---

**10.** "Requiring an attorney against his better judgment to examine his client places no unfair burden on the attorney: an attorney is always faced with the burden of developing his trial strategy in the light of what evidence is available and presented in court. Nor is a defendant ordinarily prejudiced when he is represented by an attorney who believes, contrary to the defendant, that the latter should not testify."

*People v. Robles,* 2 Cal.3d 205, 85 Cal.Rptr. 166, 173, 466 P.2d 710, 716–17 (1970).

ment rights, although counsel's judgment of the tactical value thereof should be much better than the defendant's.

Judge Thornberry's observation that the attorney need not walk his client to the electric chair is a striking phrase, but is based upon a erroneous premise. It is the defendant's day in court, not the lawyer's. "[I]t is he [the defendant] who suffers the consequences if the defense fails." *Faretta v. California*, 422 U.S. at 820, 95 S.Ct. at 2533, 45 L.Ed.2d at 573. Because "[t]he defendant, and not his lawyer or the State, will bear the personal consequences of a conviction . . . his choice [to represent himself] must be honored out of 'that respect for the individual which is the life-blood of the law.'" *Id.* at 834, 95 S.Ct. at 2541, 45 L.Ed.2d at 562.

### (2) Harmless error

The panel opinion adopted by the court pretermitted the constitutionality of the right to testify and held that if the right existed its denial constituted harmless error beyond reasonable doubt under *Chapman v. California*. The *Chapman* rule of harmless constitutional error should not be applied to this case.

In *Chapman* the Supreme Court rejected the contention that all federal constitutional errors require automatic reversal, saying:

> We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

*Id.*, 386 U.S., at 22, 87 S.Ct. at 827, 17 L.Ed.2d at 709. *Chapman* was concerned with the effect of highly prejudicial evidence or comments finding their way into the trial (in that instance, prosecutorial comment on defendants' failure to testify). With respect to this type of error the Court

quoted from *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963):

> "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

*Id.* 386 U.S. at 23, 87 S.Ct. at 827, 17 L.Ed.2d at 710. The Court then established a general federal rule for error that is harmless though of constitutional dimension, drawing on the *Fahy* standard relating to improper admission of evidentiary matter:

> We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*Id.* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710–11.

The Court in *Chapman* specifically excluded from the new federal harmless error rule constitutional errors the converse of the "unimportant and insignificant" ones within the rule:

> [T]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . . .

*Id.* at 23, 87 S.Ct. at 827, 17 L.Ed.2d at 710, citing as examples coerced confessions (*Payne v. Arkansas*),[11] right to counsel (*Gideon v. Wainwright*)[12] and right to an impartial judge (*Tumey v. Ohio*).[13] Beyond these rights enumerated in *Chapman*, several other rights seem beyond the pale of the harmless error rule. *See Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) (double jeopardy); *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (grand jury selection); *cf. Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (right to cross-examination); *Anders v. California*, 386 U.S. 738, 87

---

**11.** 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).

**12.** 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**13.** 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

S.Ct. 1396, 18 L.Ed.2d 493 (1967) (right to appeal).

The right to testify also escapes the application of the harmless error rule. Like the rights recognized to be outside *Chapman*, the right to testify is fundamental. It is part of the due process right to fair trial and is recognized as such even in some extra-judicial proceedings. It is embraced in the right of the defendant to meet and deny the accusation against him and to present evidence in his behalf, including himself as a witness. The decision whether defendant will testify is a choice between mere passivity at trial and active participation through which the defendant can inject his own acts, voice and personality into the process. Taking the stand is the defendant's opportunity, if he wants it, to face his accusers and the jury, tell his story, submit to examination, and exercise such ability as he may have to persuade those who will make a decision that may vitally affect his life. And the witness box gives the defendant a forum to speak to a world larger than the courtroom. Considerations such as these make the right to testify fundamental to the fairness, the dignity and the vitality of the twentieth century judicial process.

The right to testify bears another similarity to the substantial rights falling outside *Chapman*. As I have already explained, the right to testify, like the right to counsel, the right to a jury trial, the right to plead guilty, and the right to be free of double jeopardy, is personal to the defendant. When personal rights are involved, the harmless error rule does not apply because we are not concerned with the "ultimate consequences" of trial, but with preventing the individual from being overcome by the criminal process. *See Price v. Georgia, supra*, 398 U.S. at 331, 90 S.Ct. at 1762, 26 L.Ed.2d at 306. We recognize that an individual denied the right personally to decide whether to plead guilty deserves a new trial regardless of whether there was sufficient evidence to convict. Similarly, here we should protect the individual's right to testi-

fy if he desires rather than merely analyze the substance of what his testimony would have been. The defendant's right to decide, as well as his right to the evidence he may present, is constitutionally protected.

Finally, the right to testify resembles other rights recognized as requiring automatic reversal because it is impossible, and perhaps improper, to attempt to judge the effect that the defendant's appearance on the stand would have had on the jury. Many of the rights excluded from the operation of *Chapman* require automatic reversal because their denial completely taints the veracity of the trial process or because the denial of the right produces such subtle and unquantifiable influences that we are unable to judge its effect.[14] We cannot know whether a defendant denied counsel would have fared better with an attorney, or whether an impartial judge would have ruled differently on the many discretionary points raised at trial, or whether a racially neutral grand jury would have acted differently.

The denial of the right to testify produces a situation equally incapable of being analyzed in terms of the net amount of evidence necessary to convict. *Chapman* was an evidence case, involving improper matter getting before the jury. To determine if there was harmless error beyond reasonable doubt the court used the test of whether there is a reasonable probability that the improper matter might have contributed to the verdict. If the concern here were improper exclusion of evidence, presumably the test would be the converse—whether it is reasonably probable that the evidence, if admitted, might have contributed to a verdict. That is substantially the approach of the panel in this case, which analyzed the content of what petitioner would have said from the stand and concluded that exclusion of it was error without injury beyond reasonable doubt because it "would not have altered the verdict." This treatment of the issue as an evidentiary problem is appropriate if the excluded testimony is

---

**14.** In a sense, these rights are not capable of *Chapman* analysis because we cannot truthful- ly say that the error was harmless beyond a reasonable doubt.

that of a mere witness.[15] Judges can, with a reasonable degree of assurance, identify and sort out merely trivial or cumulative evidence and form a reasoned judgment on possible impact upon the jury of what it erroneously heard or failed to hear. There is a degree of speculation, but the risk is acceptable. Where the error is in keeping the defendant from the stand the judge can consider the content of what the defendant might have said the same as for a nonparty witness. But he cannot weigh the possible impact upon the jury of factors such as the defendant's willingness to mount the stand rather than avail himself of the shelter of the Fifth Amendment, his candor and courtesy (or lack of them), his persuasiveness, his respect for court processes. These are elusive and subjective factors, even among persons who might perceive and hear the defendant, but more significantly, they are matters neither communicated to an appellate judge nor susceptible of communication to him. Appellate attempts to appraise impact upon the jury of such unknown and unknowable matters is purely speculative. In this case the panel, and the en banc court, addressed themselves to only the content of what the defendant would have said. They gave no consideration to the additional concerns arising from the defendant himself being kept from the stand, and, indeed, the opinions do not reveal that the court is even aware of these other concerns.

Because we cannot truly judge the effect of the defendant's being denied the right to take the stand, and because we should be concerned with protecting both the right to choose whether to testify and the substance of the testimony, I suggest that the majority's reliance on *Chapman* is entirely misplaced. To apply such an outcome-determinative analysis at worst denigrates the position of the individual with respect to his own defense and trial and at best exhibits

an unthinking paternalism toward criminal defendants.

In *Faretta* the Supreme Court vacated the conviction of a defendant who was not permitted to appear pro se. There was no hint that Faretta would have fared better without his appointed lawyer (indeed, it was implied that, as one might expect, he might fare worse), yet the Court did not even see fit to discuss the possibility of error without injury under *Chapman*.

### (3) Adequacy of counsel

Neither the panel nor the en banc court has addressed the issue of ineffective counsel, although historically this has been the usual entry point for consideration of the right to testify. If the right to testify is constitutional in dimension and personal to defendant, counsel's depriving him of the right would be counsel ineffective in the constitutional sense—a court could hardly countenance on tactical or strategic grounds counsel's depriving his client of such a right over the client's objection. But, even if the right to testify is not itself of constitutional status, or is not personal to the defendant, it is still possible that all the circumstances surrounding the denial of the right to testify, including the denial itself, add up to ineffective counsel. The majority have not considered this possibility. I believe counsel was inadequate in this case, both because Wright was denied the exercise of his constitutional rights and because of the manner in which counsel handled Wright's effort to testify.

I, of course, believe that denial of a federal constitutional right to testify supports a finding of ineffective assistance of counsel. The court, however, need not reach this issue to decide that counsel deprived the petitioner of his constitutional rights. The petitioner had a right to testify under

**15.** For a true "exclusion of evidence" case, *see* *Jackson v. Wainwright*, 390 F.2d 288 (CA5, 1968). Identification was a crucial issue, and the prosecution failed to disclose exculpatory statements made by an eyewitness concerning the appearance of an alleged rapist. The eyewitness was not called by the state, and the

defense did not know of her exculpatory remarks. We treated the matter as an evidentiary question and, focusing upon content, held that we could not assume that this evidence would not have effected the jury's deliberations, therefore nondisclosure was not harmless beyond reasonable doubt.

the Texas constitution. Although Texas courts have not directly addressed the right of a defendant to testify against the advice of his counsel,[16] the language of the constitution is clear. Moreover, the Texas Code of Criminal Procedure clearly secured the right to testify. Wright was not informed of either his constitutional or statutory right.

I would also hold counsel ineffective because of the coercive and overreaching manner in which Wright's demand to testify was handled. A battle of wills between attorney and client, such as occurred in this case, is unnecessary. As was done in *Parsons v. U. S.*, counsel can advise the client not to testify but also tell him he is free to go ahead if in his own judgment he wants to.[17] Counsel can call the matter to the court's attention and ask for instructions or he can bring the dispute to the surface through a motion for leave to withdraw. *See U. S. v. Von Roeder*, 435 F.2d 1004 (CA10), *vacated on other grounds sub nom. Schreiver v. U. S.*, 404 U.S. 67, 92 S.Ct. 326, 30 L.Ed.2d 222 (1971).

In this case the shortcomings of defense counsel were several. Counsel failed to provide the petitioner with information concerning the legal consequences of the dispute between counsel and client. Counsel did not tell petitioner that they could withdraw only with leave of court and that if they withdrew successor counsel would have to be appointed. Counsel did not advise the petitioner that *Faretta* permitted him to represent himself if he so desired. They did not tell petitioner that the dispute appropriately might be settled by the court itself upon filing of a petition to withdraw.

Indeed, they did not tell petitioner that the court had any role or interest in the matter. The petitioner was entitled to full, fair and accurate advice. He did not get it. Also counsel neither sought a ruling from the court concerning the dispute nor even advised the court of its existence. Counsel's position, pure and simple, was "do what we say or we quit." However well intentioned, this was coercive. It was a threat of an option not available to appointed counsel, who were not free to cease representation without leave of court. In his brief respondent acknowledges the coercive nature and the doubtful propriety of the threat:

> Petitioner's counsel's harsh threat, directed at a frightened defendant, may well have constituted an ethical violation of his professional responsibility. However, it was not fraudulent, negligent or incompetent.

Brief of respondent, filed August 9, 1976, p. 10.

Counsel may not abandon representation on his own *ipse dixit. See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (leave of court required for counsel to withdraw on appeal); *Tripp v. Santa Rosa St. R. R.*, 144 U.S. 126, 12 S.Ct. 655, 36 L.Ed. 371 (1892); ABA Code of Professional Responsibility, DR 2–110. Nor can he use the threat of abandonment as a tool of coercion. *See Wilcox, supra.* By the order of the appointing court appointed counsel is in the courtroom as the living embodiment of *Gideon*. A court cannot countenance a threat by this shield bearer, uttered to impose his will on his client, that he will walk out and leave unprotected the

---

**16.** In interpreting the constitutional provision, the Texas courts have not faced the resolution of a conflict between client and counsel. *Ex Parte Lovelady*, 152 Tex.Cr. 93, 207 S.W.2d 396 (1947) (Tex.Crim.App.), held that counsel who had failed to put the defendant on the stand had nevertheless rendered effective assistance of counsel. The case seems wholly concerned with questions of trial strategy rather than with counsel who refused a defendant's demand to testify. Beyond *Lovelady*, Texas cases merely hold that the court may infringe a defendant's right to self-representation to maintain good order and efficiency in the court-

room. *See Harris v. State*, 425 S.W.2d 642 (Tex.Crim.App.1968); *Ward v. State*, 427 S.W.2d 876 (Tex.Crim.App.1968); *Leahy v. State*, 111 Tex.Cr. 570, 13 S.W.2d 874 (Tex. Crim.App.1928). These cases are not dispositive because they deal with self-representation rather than the right to testify.

**17.** Note the statement of the federal district judge in the present case: "It might have been better for counsel, after fully admonishing his client, to permit him to testify should he persist in demanding to do so."

ward whose rights he has been designated to safeguard. To permit this is "to imprison a man in his privileges and call it the Constitution." *Adams v. U. S. ex rel. McCann*, 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942).

Resort to the harmless error doctrine does not overcome inadequacy of counsel. In this circuit, we have consistently held that one suffering inadequate counsel need not show to receive a new trial that adequate counsel would change the result on retrial. *See Bonds v. Wainwright*, 564 F.2d 1125 (CA5, 1977); *Lumpkin v. Smith*, 439 F.2d 1084 (CA5, 1971); *cf. Chapman v. California*. I would therefore hold petitioner entitled to a new trial with effective assistance of counsel.

(4) Did petitioner waive his rights?

Of course, even a fundamental right may be waived. *See Boykin v. Alabama*, 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279 (1969); *Patton v. U. S.*, 281 U.S. at 312, 50 S.Ct. at 263, 74 L.Ed. at 870 (1930); *Fay v. Noia*, 372 U.S. at 439, 83 S.Ct. at 849, 9 L.Ed.2d at 869 (1963); *Faretta v. California*, 422 U.S. at 835–36, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–82 (1975). Waiver requires that the defendant voluntarily relinquish a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). Whether this case is approached as a fundamental right case or as an ineffective counsel case, there has been no constitutionally effective waiver by the defendant.

I regret that the court has been unwilling to face this case squarely. I would meet it head on. I would recognize that the right of the defendant to testify on his own behalf is embraced in our Constitution, that it is fundamental and personal to the defendant, and that it is beyond the reach of the harmless constitutional error rule. Independently of the foregoing, I would hold also that appointed counsel for this defendant were ineffective.

I respectfully dissent.