**The PEOPLE of the State of Colorado, Petitioner**

v.

**Arthur CURTIS, Respondent.**

**Dennis Ray JONES, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Nos. 82SC414, 83SC26.**

Supreme Court of Colorado, En Banc.

April 23, 1984.

Rehearing Denied May 7, 1984.

As Modified on Denial of Rehearing May 21, 1984.

---

506

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Laura E. Udis, Richard H. Forman, Maureen Phelan, Asst. Atty. Gen., Denver, for the People.

Allen, Foreman & Mueller, Norman R. Mueller, Susan L. Foreman, Denver, for Curtis and Jones.

Richard H. Forman, Maureen Phelan, Asst. Attys. Gen., Denver, Attorneys for respondent.

LOHR, Justice.

The Colorado Court of Appeals held in *People v. Curtis,* 657 P.2d 990 (Colo.App. 1982), that when a defendant waives the right to testify on his own behalf, the trial court has a duty to ascertain on the record

whether the defendant makes that waiver with a complete understanding of his rights, including the right to override the advice of his counsel not to testify. The issue of waiver of the right to testify also arose in *People v. Jones,* 665 P.2d 127 (Colo.App.1982). We granted certiorari in these cases, and now adopt the principle set forth by the court of appeals in *Curtis.* We hold that defendant Arthur Curtis did not voluntarily, knowingly and intentionally relinquish the right to testify. He is entitled to a new trial. We hold that defendant Dennis Ray Jones did waive his right to testify. His conviction is affirmed.

## I.

The facts of each case concerning waiver of the right to testify are as follows:

### A.

Arthur Curtis was brought to trial before a jury in 1981 and was found guilty of first-degree assault.[1] He did not testify at trial. Curtis raised the issue of effective waiver of his right to testify in a motion for a new trial.

During the trial, both after the prosecution rested and after the defense rested, Curtis, his counsel and the prosecutor appeared before the judge out of the presence of the jury. During these times, Curtis did not speak to the judge about testifying or about anything else. Immediately before the lunch recess following the presentation of the defendant's case, Curtis' trial lawyer told the judge that Curtis would not testify, and the defense rested. When Curtis returned from the recess over two hours later, he was intoxicated. The case was then submitted to the jury, which found him guilty of first-degree assault. Curtis moved for a new trial, and an evidentiary hearing was held on that motion.

Curtis was represented by different lawyers before, during, and after trial. Each of the first two lawyers testified at the hearing on the new trial motion, as did the

defendant. A summary of their relevant testimony follows.

Curtis' pretrial lawyer conferred with him at least twice. She stated at a hearing on the new trial motion that it was her practice at the beginning of a case to advise her client generally of his options. This included explaining that a client has the right to testify or not to testify, and that no one can take that decision away from the client. When a case was set for trial it was her practice to talk to her client again about testifying. She would tell her client that she would offer advice about whether to testify, but that "what I think doesn't matter" because an accused person has an absolute right to testify. She did not remember telling this "general story" to Curtis, but she said that she assumed she had done so because she talked to all her clients thoroughly. She remembered discussing Curtis' alibi defense with him, and was "sure" that she had told him that they would make the final decision about testifying after hearing the prosecution's case, although she acknowledged that she did not recall actually saying this to Curtis. Curtis stated under oath that she did not advise him of his right to testify.

Curtis' trial lawyer recalled that after hearing the prosecution's case he had decided that Curtis would not testify, and told him so. Curtis did not respond. The lawyer never advised Curtis that whether to testify was Curtis' decision.

Curtis gave evidence at the hearing that he understood in a general sense that he had a right to testify, but he did not realize that he could override his trial lawyer's decision. Curtis said that if he had known that the decision was his, he would have testified regarding his alibi.

At the conclusion of the hearing, the trial court denied the new trial motion, finding that Curtis' conduct in returning to the courtroom intoxicated after the noon recess demonstrated an intention not to testify. The court of appeals ordered a new trial, holding that

1. Section 18-3-202, C.R.S.1973.

when there is ostensibly a waiver of this fundamental right [to testify] by a defendant, the trial court has a duty and obligation to question the defendant to ascertain whether that waiver was made by the defendant with a complete understanding of his rights, including the right to override the contrary advice of his counsel.

*People v. Curtis*, 657 P.2d at 991–92.

### B.

Dennis Ray Jones was convicted of first-degree murder[2] after a jury trial in 1974. He did not testify at trial. He raised the issue of uninformed waiver of his right to testify in a 1980 *pro se* motion for postconviction relief.[3]

Jones was represented by two lawyers throughout the trial. His lead counsel stated under oath at the hearing on the 1980 motion that he had told Jones that he had a right to take the stand, and that only Jones could decide whether to exercise that right. He had advised Jones not to testify because if he took the stand his criminal record could be revealed to the jury, his alibi testimony would be uncorroborated, and he might lose his self-control while testifying. Lead counsel recalled that Jones had said he would follow counsel's recommendation and not testify.

Co-counsel also gave evidence at the motion hearing and stated that he believed that defendants should take the stand when at all possible, and that he knew that the defendant has the right to make that decision. He recalled presenting to Jones the advantages and disadvantages of testifying, and recommending along with lead counsel that Jones not take the stand. Co-counsel did not remember whether he had told Jones that the decision whether to testify rested with Jones, but he did remember that he had not told Jones that he could not testify.

Jones attested at the 1980 postconviction hearing that he had wanted to testify at his trial. However, he had found counsel's review of the disadvantages of testifying "somehow threatening." It was Jones' impression that lead counsel was ordering him not to testify and demanding that he not testify. He said that lead counsel had told him that if he took the witness stand he would be convicted, and counsel would "want nothing to do with the case."

Jones also avowed that he had brought this dispute to the attention of the trial judge, and the judge had told him, "Your lawyer advised against it. I suggest you don't take the stand, ... just go along with your attorney, what your attorney say[s]." Jones admitted that no such statement appears in the record, and the trial judge stated under oath at the hearing that he never proceeded in a criminal case without a court reporter present. Jones, appearing *pro se* at the hearing, did not question the judge on this subject. Jones acknowledged that in earlier cases in which he was the defendant he had been informed by the court that he had a constitutional right to testify.

At the end of the hearing on postconviction relief, the district court told Jones, "I find that [your lawyers] informed you that you did have the right to take the stand and that you made a decision jointly or on your own behalf not to do that." The motion was denied. The court of appeals affirmed without discussing whether Jones' right to testify had been effectively waived. *People v. Jones*, 665 P.2d at 131.

### II.

The common issue in these cases is waiver of the right to testify. The standards for waiver are determined by the nature of the right to testify itself.

### A.

■ A defendant in a criminal case has the constitutional right to testify in his own defense under the due process clauses of the United States Constitution, amend. XIV, and the Colorado Constitution, Art. II,

---

**2.** Section 18–3–102, C.R.S.1973.

**3.** Crim.P. 35(c), formerly Crim.P. 35(b).

§ 25. *Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972); *People v. Myrick,* 638 P.2d 34, 38 (Colo.1981). While the United States Supreme Court has never had occasion to enunciate explicitly and unequivocally that there is a due process right to testify, the cumulative effect of its pronouncements on the subject leaves no doubt that such a right exists. *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975); *Brooks v. Tennessee,* 406 U.S. at 612, 92 S.Ct. at 1895; *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 647, 28 L.Ed.2d 1 (1971); *In re Oliver,* 333 U.S. 257, 273, 275, 68 S.Ct. 499, 507, 508, 92 L.Ed. 682 (1948); *see also United States v. Grayson,* 438 U.S. 41, 54, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978); *accord People v. Chavez,* 621 P.2d 1362, 1368 (Colo.), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) (Quinn, J., concurring). This court has stated on several occasions that the right

to testify is constitutional. *People v. Walker,* 666 P.2d 113 (Colo.1983); *People v. Myrick,* 638 P.2d at 38; *People v. Chavez,* 621 P.2d 1362 (Colo.), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981); *People v. Montez,* 197 Colo. 126, 589 P.2d 1368 (1979); *People v. Henry,* 195 Colo. 309, 578 P.2d 1041, *appeal dismissed,* 439 U.S. 961, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978). Our recognition of the constitutional right to testify is in accordance with the large majority of authority in both state[4] and federal[5] courts. Colorado courts have held that the federal due process right to testify may not be impermissibly burdened, for instance by admitting the defendant's testimony as proof of the elements of habitual criminality, *People v. Chavez,* 621 P.2d 1362 (Colo.), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), or by admitting statements obtained in violation of the *Miranda* rule[6] as evidence of guilt if the defendant testifies, *People v. Evans,* 630 P.2d 94 (Colo.App.1981).[7] We

**4.** *E.g., Hughes v. State,* 513 P.2d 1115 (Alaska 1973); *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973); *People v. Robles,* 2 Cal.3d 205, 466 P.2d 710, 85 Cal.Rptr. 166 (1970); *Johnson v. State,* 380 So.2d 1024 (Fla.1979); *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971); *People v. Knox,* 58 Ill.App.3d 761, 16 Ill.Dec. 182, 374 N.E.2d 957 (1978); *Pigg v. State,* 253 Ind. 329, 253 N.E.2d 266 (1969); *Sims v. State,* 295 N.W.2d 420 (Iowa 1980); *State v. McKinney,* 221 Kan. 691, 561 P.2d 432 (1977); *People v. Farrar,* 36 Mich.App. 294, 193 N.W.2d 363 (1972); *State v. Rosillo,* 281 N.W.2d 877 (Minn.1979); *State v. Escamilla,* 195 Neb. 558, 239 N.W.2d 270 (1976); *State ex rel. Sikora v. District Court,* 154 Mont. 241, 462 P.2d 897 (1969); *Ingle v. State,* 92 Nev. 104, 546 P.2d 598 (1976); *Connery v. State,* 499 P.2d 462 (Okl.Cr.App.1972); *Mathis v. State,* 471 S.W.2d 396 (Tex.Cr.App.1971); *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980); *cf. State v. King,* 24 Wash.App. 495, 601 P.2d 982 (1979) ("absolute right"); *contra, Young v. Ricketts,* 242 Ga. 559, 250 S.E.2d 404 (1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979); *State v. McKenzie,* 17 Md.App. 563, 303 A.2d 406 (1973); *State v. Hutchinson,* 458 S.W.2d 553 (Mo.1970).

**5.** *E.g., United States v. McCord,* 420 F.2d 255 (D.C.Cir.1969); *United States v. Bifield,* 702 F.2d 342 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *United States ex rel. Wilcox v. Johnson,* 555 F.2d 115 (3d

Cir.1977); *Ashe v. North Carolina,* 586 F.2d 334 (4th Cir.1978), *cert. denied,* 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979); *Hollenbeck v. Estelle,* 672 F.2d 451 (5th Cir.), *cert. denied,* 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982); *Alicea v. Gagnon,* 675 F.2d 913 (7th Cir.1982); *cf. United States v. Panza,* 612 F.2d 432 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980) (right to testify "has become a basic feature of our law"); *contra, Hayes v. Russell,* 405 F.2d 859 (6th Cir.1969); *United States v. Von Roeder,* 435 F.2d 1004 (10th Cir.1970), *cert. denied,* 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 713 (1971).

**6.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** While we have based the right to testify on the due process clauses of the United States and Colorado Constitutions, the involvement of counsel in the decision on whether to take the stand also implicates the separate right to effective assistance of counsel under *U.S. Const.* amends. VI, XIV. *See Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). It has also been suggested that the right to testify is implied by the defendant's right to "compulsory process for obtaining witnesses in his favor" under *U.S. Const.* amend. VI. *United States v. Bifield,* 702 F.2d at 349; *Wright v. Estelle,* 572 F.2d 1071, 1076 (5th Cir.1978) (Godbold, J., dissenting); *United States v. Cariello,* 536 F.Supp. 698, 702–03 (D.N.J.1982). The right to "appear

reaffirm that defendants in criminal cases enjoy a constitutional right to testify.

### B.

The facts of the cases at hand raise two questions with respect to the issue of waiver of the right to testify. First, what are the prerequisites to effective waiver of the right to testify? Second, what are the duties of the trial court concerning that right? The answers to these inquiries are dependent upon resolution of the general question of whether the right to testify is among that group of rights so fundamental and personal that courts have required certain procedural safeguards before accepting waiver of the right in order to ensure that the true meaning of the right is preserved.

It is universally recognized that some constitutional rights are sufficiently fundamental to share the procedural safeguards concerning voluntary, knowing and intentional waiver that *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), established for the right to counsel. These include the rights implicated by the choosing of a plea (i.e., the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers), *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *People v. Randolph*, 175 Colo. 454, 488 P.2d 203 (1971), and the right to trial by jury, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942);

*Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); *Rice v. People*, 193 Colo. 270, 565 P.2d 940 (1977). *See also Penney v. People*, 146 Colo. 95, 360 P.2d 671 (1961) (right to be present at each step of felony proceedings cannot be waived by counsel). However, as to other rights "[d]efense counsel stands as captain of the ship," *Steward v. People*, 179 Colo. 31 at 34, 498 P.2d 933 at 934, with authority to make binding decisions. We have stated that decisions committed to counsel include what witnesses to call (excepting the defendant), whether and how to conduct cross-examination, what jurors to accept or strike, and what trial motions to make. *Id.* It is worth noting that these latter decisions also have a constitutional basis, arising from *U.S. Const.* amends. V, VI and XIV; and *Colo. Const.* Art. II, secs. 16, 17, 23 and 25.

The distinction between constitutional rights for which procedural safeguards are required to guarantee that waiver is voluntary, knowing and intentional, and other constitutional rights of the defendant in a criminal case, is founded on at least two important considerations. First, some rights are so inherently personal and basic that fundamental fairness of a criminal trial is called into question if they are surrendered by anyone other than the accused, or if the accused relinquishes them in any manner other than by voluntary, knowing and intentional waiver. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Second, establishing waiver of such a right in court on the record helps assure that the waiver is effective and facilitates meaningful appellate review without significantly impeding trial

and defend in person and by counsel" under *Colo. Const.* Art. II, § 16 may also be an independent constitutional source of the right to testify. *See, e.g., Carter v. State*, 424 So.2d 1336 (Ala.Cr.App.1982); *Hall v. Oakley*, 409 So.2d 93 (Fla.App.1982); *State v. Douglas*, 292 Or. 516, 538, 641 P.2d 561, 573 n. 32 (1982) (Lent, J., concurring); *Campbell v. State*, 4 Tenn.Cr.App. 100, 469 S.W.2d 506 (1971); *Feist v. State*, 631 S.W.2d 769 (Tex.App.1982); *In re Mecier*, 143 Vt. 23, 460 A.2d 472 (1983). In Colorado, unlike many other states, the right to testify was recognized by statute even before statehood. Colo.

Sess.Laws 1872 at 95; *see also People v. Evans*, 630 P.2d 94 (Colo.App.1981); section 13–90–101, C.R.S.1973; section 39–7–15, C.R.S.1963. In *Jones* the People challenge the constitutional basis of the right to testify because a criminal defendant, being an interested party, was incompetent to testify under common law when the constitutional right to due process was established. *But see Ferguson v. Georgia*, 365 U.S. at 577, 582, 602, 81 S.Ct. at 760, 763, 773. Notwithstanding incompetency under common law, our own decisions, *e.g., Myrick*, 638 P.2d at 38, clearly recognize the due process right to testify.

court proceedings. *Cf. People v. Watkins,* 200 Colo. 163, 613 P.2d 633 (1980) (in order to promote judicious selection of an appropriate sentence and to facilitate effective appellate review, we require that sentencing judges state on the record the basic reasons for imposing sentences to a correctional facility); *see also People v. Phillips,* 652 P.2d 575, 581 (Colo.1982) (Lohr, J., specially concurring).

■ A close reading of relevant authority in light of these considerations persuades us that the right to testify is so fundamental that the effectiveness of its waiver must be tested by the same constitutional standards applicable to waiver of the right to counsel. This court has never had occasion to address squarely the question of whether the right to testify is such a right. *But see People v. Chavez,* 621 P.2d 1362, 1369 (Colo.), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) (Quinn, J., concurring) (the constitutional right to testify "is so inherently personal and fundamental that it can be waived only by the defendant and not his attorney"); *Martinez v. People,* 173 Colo. 515, 518, 480 P.2d 843, 844 (1971) (decision whether to testify is of a fundamental nature). However, we have held on several occasions that the decision on whether to take the stand is ultimately to be made by the defendant. *People v. Layton,* 200 Colo. 59, 612 P.2d 83 (1980); *Steward v. People,* 179 Colo. 31, 498 P.2d 933 (1972); *McClendon v. People,* 174 Colo. 7, 481 P.2d 715 (1971); *Martinez v. People,* 173 Colo. 515, 480 P.2d 843 (1971); *see also Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring).[8] Thus, we have regarded the decision whether a defendant should exercise his right to testify as one of such compelling importance that it is excluded from the group of constitutionally based rights that defense counsel can elect to exercise or waive on the behalf of the accused.[9]

We now hold that the procedural safeguards established by *Johnson v. Zerbst* apply to waiver of the constitutional right to testify. This is the only result consistent with *Layton, Steward, McClendon,* and *Martinez.* Moreover, we are persuaded for several independent reasons that the right to testify is so fundamental that these safeguards are necessary.

**8.** The original source of the characterization of the decision to take the stand as being ultimately for the accused to make is ABA Standards for Criminal Justice § 4–5.2(a) (2d ed. 1982). However, the constitutional right to testify is both the inspiration behind the standard and the legal authority for imposing it as a requirement in criminal trials. *See State v. Rosillo,* 281 N.W.2d 877 (Minn.1979); *Wright v. Estelle,* 572 F.2d 1071, 1077 (5th Cir.), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978) (Godbold, J., dissenting); Commentary, Standards for Criminal Justice § 4–5.2(a) (2d ed. 1982).

**9.** The only statement by the United States Supreme Court relating to the importance of the right to testify appears in *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), where the court said that "[w]hether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." *Id.* at 612, 92 S.Ct. at 1895. Courts of other jurisdictions are divided over the question of whether the constitutional right to testify is fundamental, with most courts characterizing it as such. *See United States ex rel. Wilcox v. Johnson,* 555 F.2d 115 (3d Cir.1977); *Winters v. Cook,* 489 F.2d 174 (5th Cir.1973); *Alicea v.*

*Gagnon,* 675 F.2d 913 (7th Cir.1982); *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973); *Figeroa v. State,* 244 Ark. 457, 425 S.W.2d 516 (1968); *Hall v. Oakley,* 409 So.2d 93 (Fla.App.1982); *Ingle v. State,* 92 Nev. 104, 546 P.2d 598 (1976); *but see State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980). Many courts, including our own, have held that the decision on whether to testify ultimately rests with the defendant. While the courts have generally accepted that the constitutional right to testify imposes certain obligations on defense counsel, a majority of courts addressing the issue have not required that waiver of the right to testify be made in open court, on the record. *See United States v. Ives,* 504 F.2d 935 (9th Cir.1974), *vacated on other grounds,* 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975); *People v. Mosqueda,* 5 Cal.App.3d 540, 85 Cal.Rptr. 346 (1970); *State v. McKinney,* 221 Kan. 691, 561 P.2d 432 (1977); *State v. Hutchinson,* 458 S.W.2d 553 (Mo.1970); *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223.(1980). *But see Culberson v. State,* 412 So.2d 1184 (Miss.1982); *Hollenbeck v. Estelle,* 672 F.2d 451, 452 (5th Cir.1982); *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973).

First, as this court has previously recognized, the decision on whether to testify is crucial in governing the defendant's fate. *Martinez v. People*, 173 Colo. 515, 480 P.2d 843 (1971). The value of the right to testify is inestimable. *Yates v. United States*, 227 F.2d 844, 846 (9th Cir.1955), *aff'd in part and rev'd in part*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).

It is true that the defendant's interest in the outcome, and often his impeachment by evidence of prior felonies, may cause the finder of fact to question the credibility of his testimony. However, the finder of fact will often deem the defendant's testimony compelling and conclusive because it is he—and only he—who offers direct evidence of his state of mind bearing on such intangibles as intent, insanity, self-defense, duress, mistake, entrapment and motive. *United States v. Edwards*, 458 F.2d 875 (5th Cir.), *cert. denied*, 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (1972). Moreover, the defendant's testimony gives the jury an immediate and visible impression of him as a person, which may color their view of the entire case against him.[10] It is for these reasons that the United States Supreme Court has recognized that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961) (plurality opinion, discussing right of allocution.)

■■■ Furthermore, whether or not it improves the defendant's chances of acquittal, "his desire to tell 'his side' in a public forum may be of overriding importance to him.... The wisdom or unwisdom of the defendant's choice does not diminish his right to make it." *Wright v. Estelle*, 572 F.2d 1071, 1078–79 (5th Cir.), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978) (Godbold, J., dissenting). Some courts have said that the issue of what procedural safeguards are needed to pre-

serve the right to testify is really a question of properly allocating authority between attorney and client. *See id.* at 1079. While an able, dispassionate attorney might be able to predict accurately the impact of a client's testimony on the finder of fact, the lawyer can never know, much less weigh, exactly how important it is to the client for the client to have his say. Hence the authority to decide whether to testify must be allocated to the client. This is the import of EC 7–8 of the Code of Professional Responsibility, adopted by this court, which states that "the lawyer should always remember that the decision whether to forego legally available objectives or methods [e.g., the objective of improving the defendant's chances of acquittal, or the method of exercising the right to remain silent] because of nonlegal factors is ultimately for the client and not for himself." *See also* Code of Professional Responsibility EC 7–26, C.R.S. 1973. When a defendant wishes to speak, whatever the consequences to his case, it is fundamentally wrong to allow his conviction "by a jury which never heard the sound of his voice." *See McGautha v. California*, 402 U.S. 183, 220, 91 S.Ct. 1454, 1474, 28 L.Ed.2d 711 (1971).

Finally, when the defendant decides whether to testify, he "elects whether to become an active participant in the proceeding that affects his life and liberty and to inject his own action, voice and personality into the process to the extent the system permits." *Wright v. Estelle*, 572 F.2d at 1078 (Godbold, J., dissenting). In testifying, the defendant employs the opportunity to be heard in its most immediate sense. In other contexts, it has been recognized that the opportunity to be heard lies at the heart of due process, and that this opportunity necessarily encompasses the right to testify. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970) (termination of welfare benefits). The defendant's opportunity to

---

**10.** Westen, *Order of Proof: An Accused's Right to Control the Timing and Sequence of Evidence* *in His Defense*, 66 Calif.L.Rev. 935, 953 (1978).

place himself and his viewpoint before the finder of fact is necessary to legitimate the outcome of the trial. He has the right to know, as he suffers whatever consequences there may be, that it was the claim that he put forward that was considered and rejected. *Cf. United States v. Dougherty,* 473 F.2d 1113, 1128 (D.C.Cir.1972) (right to proceed *pro se*). If criminal trials are to be perceived as fair by the community, it is important that the public know that persons accused of crimes have not been silenced at trial by undue influence, mistaken impressions, or ignorance.

■ Because of the special evidentiary nature of the defendant's testimony, the importance of allowing the defendant to have his say regardless of its effect on the chances of acquittal, and the legitimacy that this opportunity confers upon the outcome of criminal proceedings, we hold that the constitutional right to testify is so fundamental that procedural safeguards are necessary to ensure that the defendant understands the significance of waiver of this right.[11]

### C.

■ Several consequences follow from the determination that procedural safeguards are necessary to preserve the right to testify. A waiver is an intentional relinquishment of a *known* right or privilege. The courts do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (right to counsel during trial); *People v. Richards,* 194 Colo. 83, 568 P.2d 1173 (1977) (right to counsel during custodial interrogation); *People v. Harrington,* 179 Colo. 312, 500 P.2d 360 (1972) (guilty plea). Waiver of a fundamental right must be voluntary, knowing and intentional. *Id.*

■ In order for the accused to make his decision in a voluntary, knowing and inten-

tional manner, he must be aware that he has a right to testify, he must know of the consequences of testifying, and he must be cognizant that he may take the stand notwithstanding the contrary advice of counsel. *See Poe v. United States,* 233 F.Supp. 173 (D.D.C.1964), *aff'd,* 352 F.2d 639 (D.C. Cir.1965); *Hughes v. State,* 513 P.2d 1115 (Alaska 1973); *State v. Rosillo,* 281 N.W.2d 877 (Minn.1979).

■ It follows that the "serious and weighty responsibility" of ascertaining whether there is an intelligent and competent waiver of such a right by the accused is imposed upon the trial judge. *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Whether there is proper waiver should be clearly determined by the trial court, and it would be "fitting and appropriate" for that determination to appear upon the record. *Id.; cf. Champion v. People,* 124 Colo. 253, 236 P.2d 127 (1951) (reflecting value of record in appellate review of denial of defendant's request to withdraw guilty plea).

■ A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.[12] In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right. *See Hollenbeck v. Estelle,* 672 F.2d 451 (5th Cir.),

---

11. *See* Hammerman, *A Criminal Defendant's Constitutional Right to Testify—The Implications of United States ex rel. Wilcox v. Johnson,* 23 Vill.L.Rev. 678, 685 (1978).

12. We do not address the situation present in that narrow class of cases where a prior felony conviction is an element of the crime charged.

*cert. denied,* 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982). The purposes of advisement by the court on the record are to ensure that waiver of a fundamental constitutional right is intelligent and knowing, to preclude postconviction disputes between defendant and counsel over the issue, and to facilitate appellate review. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The trial judge could discharge this duty by permitting defense counsel to question the defendant on the record in the presence of the judge. There may be situations where it would be preferable to determine the defendant's wishes in that manner.[13] To establish intelligent, knowing waiver of a constitutional right, "the best means of demonstrating the defendant's state of mind are his own declarations" on the record. *State v. Noble,* 109 Ariz. 539, 541, 514 P.2d 460, 462 (1973).

In summary we hold that waiver of the right to testify must be voluntary, knowing and intentional, and the existence of effective waiver should be ascertained by the trial court on the record.

### III.

Waiver of the right to testify must be an intentional relinquishment of a known right or privilege. For defendant Curtis, waiver was not established by the prosecution. We hold that Curtis' trial lawyer usurped from him the decision on whether to testify, regardless of what he may have learned of that right from his pretrial lawyer or other sources. Both Curtis and his trial lawyer affirmed at the motion hearing that it was the lawyer who decided that Curtis would not take the stand. The trial lawyer's statements to Curtis that Curtis would not testify, and counsel's failure to tell Curtis that Curtis could override his decision, implied that Curtis could not override that decision. Curtis' subsequent acquiescence and intoxication did nothing to ratify his trial lawyer's actions; they did not make the waiver voluntary, knowing and intentional.[14] Therefore, Curtis is entitled to a new trial.[15]

The courts indulge every reasonable presumption against waiver. However, where the trial court, applying the correct standards, makes the findings necessary to establish effective waiver, and there is evidence to support these findings, they will not be disturbed on review.[16] Such is the case for defendant Jones. Lead

---

**13.** It has been suggested that advisement by the court "is subject to abuse in interpretation and may provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel who are designing trial strategy," *State v. Albright,* 96 Wis.2d at 134, 291 N.W.2d at 493, but we believe that the trial court generally will advise the defendant of his rights properly, as indeed we believe most defense counsel do.

**14.** The trial court found that Curtis intended not to testify, basing that ruling on Curtis' conduct in becoming intoxicated over the noon recess. Even if such intent, if established, were sufficient in itself to constitute an effective waiver, the court's ruling is unsupported because the intoxication followed counsel's announcement that the defense rested its case.

**15.** The People do not claim that denial of the right of Curtis or Jones to testify was harmless error beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Therefore, we do not de-

cide whether denial of the right to testify can be harmless beyond a reasonable doubt.

**16.** *See People v. Richards,* 194 Colo. 83, 568 P.2d 1173 (1977). This court has held that in a postconviction relief proceeding, the burden is on the defendant to establish his allegations by a preponderance of the evidence. *Lamb v. People,* 174 Colo. 441, 484 P.2d 798 (1971). However, in general the burden is on the prosecution to show effective waiver of a fundamental right. *Barker v. Wingo,* 407 U.S. 514, 529, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). If this initial burden is met by the prosecution through establishment of a *prima facie* case, then in order to permit the court to find the waiver ineffective the defendant must present evidence from which it could be reasonably inferred that waiver was not voluntary, knowing and intentional. *See People v. Fowler,* 183 Colo. 300, 516 P.2d 428 (1973) (right to jury trial). We have applied the latter standard of proof in *Curtis.* We need not decide which burden of proof applies in *Jones,* an issue not addressed by the parties, because we are satisfied that the trial

counsel avowed at the hearing on postconviction relief that Jones was informed that he had a right to testify, he was informed of the advantages and disadvantages of testifying, and he was informed that he could take the stand notwithstanding the contrary advice of counsel. The decision ultimately rested with Jones. Co-counsel's statements under oath at the hearing supported this. There is sufficient evidence in the record to establish that neither the lawyers nor the judge acted in any way inconsistent with Jones' right to testify. Jones' statements under oath at the hearing, if taken as true, would be inconsistent with voluntary waiver, but the findings of the lower court impliedly discount them. This is essentially a question of credibility. Since the conclusion of the lower court that Jones effectively waived the right to testify is supported by competent evidence, Jones' conviction is affirmed.

## IV.

In each of the present cases it is clear from the records whether there is constitutionally sufficient evidence that the defendants voluntarily, knowingly and intentionally waived their rights to testify. It is also clear that the trial judges in these cases did not determine on the record whether there is intelligent and competent waiver of the right to testify. We reach the issue of absence of waiver on the record because the Colorado Court of Appeals indicated in *Curtis* that this alone is sufficient to require a new trial. The issue is also posed by *Jones.* In order to resolve *Jones,* we must determine whether it would be in the interests of justice to allow the defendant retroactive application of the legal standard of waiver established here.[17] Crim.P. 35(c)(1). We hold that it would not.

■ Initially, we affirm our adoption of the rule that the trial court has a duty to question the defendant on the record to ascertain whether waiver of the right to testify is made with a complete understanding of his rights. The present appeals make the wisdom of this rule apparent. Curtis' pretrial lawyer could not remember whether she had advised Curtis of his right to testify, as she generally did. She could estimate how often she had met with Curtis only by referring to his file. Jones' postconviction relief hearing took place six years after trial. His lawyers could remember what they had advised Jones with some clarity.[18] However, co-counsel could not recall if he had counseled Jones that the decision whether to testify rested with Jones. The former judge who had presided at Jones' trial could remember the general facts of the case against Jones, but virtually nothing concerning the procedural points Jones raised. Defects in memory were magnified by the sharp factual disputes between Jones on one hand, and the lawyers and former judge on the other. Post-trial hearings for both Curtis and Jones were required to determine the facts.

By placing the elements of intelligent and competent waiver on the record at the time of trial, the trial court can accurately determine whether waiver was indeed intelligent and competent, and that determination will be readily reviewable on appeal.[19] The alternative not only increases the chance of error, but is wasteful of judicial resources as well.

■ Nevertheless, we decline to apply our decision retroactively. The criteria

---

court's findings are adequate to resolve the issue, and are sufficiently supported by the evidence without regard to where the burden rests.

**17.** In resolving *Jones,* we are passing on the retroactive effect of the requirement that waiver be on the record as set forth in this opinion, not the retroactive effect of the opinion of the Colorado Court of Appeals in *Curtis.* The trial courts could not be expected to adhere to *Curtis* uniformly until the apparent inconsistency between *Curtis* and *People v. Palmer,* 631 P.2d

1160 (Colo.App.1981), decided by different panels of the court of appeals, was resolved.

**18.** The seriousness of the charge against Jones may have aided the attorneys' recollection.

**19.** *See, e.g., Hollenbeck v. Estelle,* 672 F.2d 451 (5th Cir.), *cert. denied,* 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982); *State v. Johnson,* 506 S.W.2d 32 (Mo.App.1974).

to be used in deciding on the retroactivity of new constitutional rules of criminal procedure are: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967); *People v. Walker*, 666 P.2d 113, 117 (Colo.1983). The first criterion is foremost. *Brown v. Louisiana*, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980). If the major purpose of a new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and raises serious doubts about the accuracy of guilty verdicts, it is given retroactive effect. *Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972). While a primary purpose of placing the elements of effective waiver on the record is to improve the accuracy of verdicts, a silent record in a trial before our decision today does not in and of itself raise serious doubts about the accuracy of a guilty verdict. Although we cannot ascertain the extent to which Colorado trial courts have not adhered to the rule we now enunciate, we believe it likely that retroactive application would be a significant burden on the administration of justice. Our holding that waiver of the right to testify necessarily requires procedural safeguards does not compel retroactive application of the rule that the voluntariness of the waiver must be determined on the record, nor does it compel the contrary. *Compare Halliday v. United States*, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) (duty to establish effective waiver of rights associated with guilty plea on the record not retroactive) *with McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (duty to establish effective waiver of right to counsel at sentencing hearing on the record retroactive). Considering the relevant criteria, we hold that our decision today is not to be given retroactive effect.

20. With the caveat expressed *supra*, note 15.

However, this does not discharge the courts from their duty to consider whether waiver of the right to testify was in fact voluntary, knowing and intentional, whatever the state of the record made at trial and whenever the verdict was handed down. The principle that the decision on whether to testify ultimately rests with the defendant, with defense counsel abiding by his wishes, evolved long before our holding today. Failure to adhere to it can substantially impair the truth-finding function of a criminal trial. *See Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) (voluntariness of statements in pre-*Miranda* investigations). Therefore, if waiver of the right to testify was not voluntary, knowing and intentional a defendant is entitled to relief.[20]

The judgments of the court of appeals in *People v. Curtis*, No. 83SC26, and *Jones v. People*, No. 82SC414, are affirmed.

ERICKSON, J., specially concurs.

ROVIRA, J., dissents.

ERICKSON, Chief Justice, specially concurring:

I concur in the result, but not with the reasons relied upon by the majority to support the result. I disagree with the court's holding that a criminal defendant's right to testify on his own behalf is a fundamental constitutional right. I also do not agree with the procedure set forth in the majority opinion for advising a defendant of his right to testify.

### I.

The majority reasons that because we have ruled previously that the right to testify may only be waived by a defendant in a criminal case, it follows that the right to testify is a fundamental constitutional right. *People v. Layton*, 200 Colo. 59, 612 P.2d 83 (1980); *McClendon v. People*, 174 Colo. 7, 481 P.2d 715 (1971). I disagree

with the majority's logic. Certain constitutional rights have been held to be so fundamental that they may only be waived by the defendant and not by his counsel. *E.g.*, *State v. Albright*, 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied*, 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980). But it does not follow that the opposite is mandated. Our past rulings requiring that waiver of the right be personal do not compel us to now hold that the right to testify is a fundamental constitutional right.

My view is supported by the Wisconsin Supreme Court decision in *State v. Albright, supra*, which declared:

"We are not convinced that the right to testify falls within this category of 'fundamental' rights, which can only be waived in open court on the record by the defendant."

291 N.W.2d at 490–91. The right to testify is a constitutional right in Colorado, but not a fundamental one. *People v. Chavez*, 621 P.2d 1362 (Colo.), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

Independent reasons for finding the right to testify to be a fundamental constitutional right in the view of the majority include: (1) the importance of the right in determining a defendant's fate; (2) the defendant's right to tell his side of the story; and (3) the importance to the defendant of becoming an active participant in his trial by exercising the opportunity to be heard. While these are all important attributes of the constitutional right to testify, they do not cause the right to rise to the level of a fundamental right with the attendant procedural safeguards.

Our court today and the Wisconsin Supreme Court are the only jurisdictions to squarely address the issue of whether the constitutional right to testify rises to the level of a fundamental constitutional right. *But see Wright v. Estelle*, 572 F.2d 1071 (5th Cir.) (Godbold, J., dissenting), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978) (dissenting judge argues right to testify is fundamental). The majority in footnote 10 lists jurisdictions which have "characterized" the right to

testify as fundamental; however, a careful reading of the cases reflects that these jurisdictions have not squarely addressed the issue. The majority declares the right of a defendant to testify to be a fundamental right and establishes a panoply of procedures to protect that right.

## II.

The United States Supreme Court in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), held that the waiver of a fundamental constitutional right requires, not only a personal waiver by the defendant, but that the waiver must be an intentional relinquishment of a known right or privilege.

The majority imposes a requirement that the waiver be on the record and mandates a long litany for a trial judge to follow in advising a defendant of his right to testify. The trial judge must:

"[A]dvis[e] the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right."

*People v. Curtis*, 681 P.2d 504 at 514 (Colo.1984) (footnote and citations omitted). The majority reasons that the procedure is required to find an intentional relinquishment of a known right or privilege.

Absent a finding that a defendant's right to testify is a fundamental constitutional right, there is no reason to impose the requirements of *Johnson v. Zerbst, supra*, and the mandatory procedure set forth by

the majority. *State v. McKinney,* 221 Kan. 691, 561 P.2d 432, 435 (1977), supports my conclusion:

"[T]he record does not have to affirmatively show a waiver of every constitutional right or privilege.... Here the accused *after full consultation with his counsel* decided not to testify [o]n his own behalf. No inquiry from the trial court was necessary or appropriate."

(Emphasis supplied). *See also United States v. Ives,* 504 F.2d 935 (9th Cir.), *vacated on other grounds,* 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1974); *People v. Mosqueda,* 5 Cal.App.3d 540, 85 Cal.Rptr. 346 (1970); *State v. Hutchinson,* 458 S.W.2d 553 (Mo.1970). Without finding the right to testify to be fundamental, each of these cases rejected a requirement that the trial judge advise the defendant of the right.

In *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980), Wisconsin declined to require trial judges to advise a criminal defendant of the right to testify. The Wisconsin court was concerned that such a rule would interfere with the attorney's right to advise his client, and said:

"We decline to recommend that a trial judge, sua sponte advise, a defendant of the right to testify. Such admonition is subject to abuse in interpretation and may provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel who are designing trial strategy."

291 N.W.2d at 493.

My concern is precisely that which the Wisconsin court addressed. It is the duty of defense counsel to advise the defendant of the right to testify and the impact of that decision. The procedure recommended by the majority would unduly interfere with the attorney-client relationship and would cause every criminal case in which a defendant does not testify to take on a new dimension. The procedure assumes that defense counsel has not properly represented his client by advising him of his right to testify. Such a procedure intrudes upon and tends to disrupt the attorney-client relationship.

Verification by the trial judge, when the issue is presented, should be made on the record and out of the presence of the jury. I believe Judge Kirshbaum in *People v. Palmer,* 631 P.2d 1160, 1162 (Colo.App. 1981) (Kirshbaum, J., dissenting) correctly analyzed the issue:

"In the event of any conflict between a defendant's desire to testify and an attorney's advice to the contrary, the defendant must be permitted to exercise his right.... When a trial court is informed that such a conflict has developed, the court has an independent obligation to explain this right to the defendant and to verify that defendant has waived the right."

The facts in the cases before us may require the same result whether the procedure set forth in the majority opinion or in this special concurrence is followed. In *Curtis,* the defendant's attorney may have made the decision as to whether the defendant would testify, but the defendant's conduct may establish a waiver of his right to testify. The defendant and not the attorney must make the decision. *People v. Layton,* 200 Colo. 59, 612 P.2d 83 (1980); *McClendon v. People,* 174 Colo. 7, 481 P.2d 715 (1971). In *Jones,* the defendant was adequately informed of his right to testify and effectively waived his right. Nothing more is required.

Accordingly, I concur in the result.

ROVIRA, Justice, dissenting:

I join the Chief Justice in his conclusion that there is no fundamental constitutional right to testify, and in his disagreement with the procedure set forth in the majority opinion for advising a defendant of his right to testify.

I dissent from the result in *People v. Curtis.* My reading of the record of the hearing in which Curtis admitted he knew he had the right to testify, but claimed he was not advised that he could "override his

trial lawyer's decision" convinces me, as it did the experienced trial judge who tried the case and heard the testimony on Curtis' motion for new trial, that Curtis waived his right to testify.

The trial judge, denying the motion for new trial, recognized that every defendant has a right to testify, and the choice of whether to testify or not is that of the defendant. He found that Curtis, by returning intoxicated from the lunch recess on the final day of trial, evidenced his intention not to testify.

In my opinion, the same standard should be applied to Curtis as the majority opinion applies in *Jones v. People*.

The trial court applied the correct standards, made the findings necessary to establish waiver, and there was evidence to support the findings. I would affirm the order of the trial judge denying Curtis' motion for new trial and reverse the judgment of the court of appeals.